**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JUANITA MARIE DURODOYE,

                            Plaintiff,                  6:16-CV-1457
                                                         (CFH)

      v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON      GREGORY P. FAIR, ESQ.
126 North Salina Street, Suite 3B           STEVEN R. DOLSON, ESQ.
Syracuse, New York 13202
Counsel for Plaintiff

U.S. SOCIAL SECURITY ADMIN.           SERGEI ADEN, ESQ.
Office of Regional General Counsel, Reg. II
26 Federal Plaza, Room 3904
New York, New York 10278
Counsel for Defendant

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## MEMORANDUM-DECISION & ORDER

     Currently before the Court, in this Social Security action filed by Juanita Marie

Durodoye ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's cross-motion for judgment on the

pleadings.  (Dkt. Nos. 9 and 11.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is granted in part and denied in part and Defendant's motion

for judgment on the pleadings is granted in part and denied in part.[1]


# I.    RELEVANT BACKGROUND

## A.    Factual Background

Plaintiff was born in 1967, making her 46 years old at the date of her application

and 48 years old at the date of the ALJ's decision.  Plaintiff reported completing the

ninth grade.  Plaintiff has past work as a prep cook and cashier.  At the initial level,

Plaintiff alleged disability due to a back impairment, fibromyalgia, depression, seizures,

and arthritis.


## B.    Procedural History

Plaintiff applied for Supplemental Security Income on March 18, 2013, alleging

disability beginning January 1, 2011.  Plaintiff's application was initially denied on July

19, 2013, after which she timely requested a hearing before an Administrative Law

Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Hortensia Haaversen on

February 10, 2015.  On April 30, 2015, the ALJ issued a written decision finding Plaintiff

was not disabled under the Social Security Act.  (T. 8-21.)[2]  On October 25, 2016, the

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner.  (T. 1.)

---

[1]      Parties consented to review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c),
Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 6.
[2]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will
be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than
the page numbers assigned by the Court's CM/ECF electronic filing system.

## C.    The ALJ's Decision[3]

Generally, in her decision, the ALJ made the following three findings of fact and conclusions of law.  (T. 13-17.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 18, 2013, the application date.  (T. 13.)  Second, the ALJ found that Plaintiff's alleged impairments including anxiety, depression, myositis, and gastroesophageal reflux/peptic ulcer disease were medically determinable impairments, but that Plaintiff's alleged impairments of fibromyalgia and arthritis were not medically determinable impairments.  (T. 13, 16.)  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that has significantly limited the ability to perform basic work-related activities for twelve consecutive months since January 2013, and that Plaintiff, therefore, does not have a severe impairment or combination of impairments.  (T. 13-14.)  Based on this finding, the ALJ concluded that Plaintiff is not disabled.

## D.    Arguments

### 1.    Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 9 at 3-8 [Pl.'s Mem. of Law].)  First, Plaintiff argues that the ALJ committed reversible error by failing to find that she had any severe impairments.  (Id. at 3-7.)  Specifically, Plaintiff argues that the ALJ improperly denied her claim based on insufficient evidence showing that she had a severe impairment lasting for a

---

[3]     The record also includes two previous ALJ decisions dated May 26, 2010, and January 29, 2013, an Appeals Council denial dated December 3, 2010, and associated administrative hearings related to Plaintiff's previous applications.  (T. 48-86, 87-115, 129-42, 143-45, 146-60.)

continuous period of twelve months despite the fact that the Step Two standard can also be met by showing that her impairments can be *expected* to last for a continuous period of at least twelve months. (Id. at 6.) Plaintiff also argues that the ALJ improperly heightened the de minimis standard at Step Two when denying Plaintiff's claim based on her finding that she did not have a history of "aggressive treatment" for her alleged symptoms. (Id. at 8.) Additionally, Plaintiff argues that, although there are no treatment notes from her rheumatologist Martin Morell, M.D. after April 2013 in the record, it is reasonable to conclude that her impairments would have continued at least through the date of the November 3, 2014 hearing -- which would satisfy the twelve-month requirement -- based on her years of previous treatment with Dr. Morell. (Id. at 6.)

Plaintiff notes that Dr. Morell treated her from 2011 through at least April 2013 for impairments including osteoarthritis and fibromyalgia, and recommended a treatment plan that included steroid injections and hydrocodone/Lortab. (Dkt. No. 9 at 4-5.) Regarding her alleged physical impairments, Plaintiff notes the following: (a) Dr. Morell's observation of positive trigger points; (b) the diagnoses of consultative examiner Tanya Perkins-Mwantuali, M.D., including likely osteoarthritis in the bilateral knees, back pain, and fibromyalgia; (c) Dr. Perkins-Mwantuali's positive examination findings; and (d) Dr. Perkins-Mwantuali's findings of the moderate limitations with walking, standing, climbing, and squatting. (Id. at 5.) Plaintiff also argues that the ALJ issued a Step Two denial based on her erroneous finding that Dr. Morell never identified any positive tender points with regard to Plaintiff's fibromyalgia, yet Dr. Morell identified positive trigger points at an April 26, 2013 examination and at prior visits. (Id. at 7.)

4

With regard to her alleged mental impairments, Plaintiff notes that she was diagnosed with anxiety disorder by Rebecca LaValley, M.D. in February 2013 and prescribed Lexapro and Hydroxyzine. (Dkt. No. 9 at 7). Plaintiff also points to the following: (a) her mental health treatment in April and May 2013 and August and October 2014; (b) consultative examiner Jeanne Shapiro, Ph.D.'s diagnoses of depressive disorder, PTSD, and adjustment disorder with anxious mood; (c) Dr. Shapiro's observations on examination; (d) Dr. Shapiro's opined mild limitations in multiple areas and moderate limitations in the ability to deal with stress; and (e) state Agency medical consultant Michelle Marks, Ph.D.'s opinion indicating numerous moderate mental limitations. (Id. at 5-6.) Plaintiff argues that her mental health impairments satisfy the durational requirement at Step Two. (Id. at 8.)

Second, Plaintiff argues that, because she appeared pro se at her hearing, the ALJ had a heightened duty to fully develop the administrative record. (Dkt. No. 9 at 7.) Specifically, Plaintiff argues that, although the ALJ reasoned that she exhibited a lack of follow through with treatment and had lengthy gaps in treatment, it appears that the relevant medical records -- including additional records from Dr. Morell and Susan Griffing, NP, which were requested but not responded to -- were not procured. (Id. at 6-7.)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes three argues in support of her motion for judgment on the pleadings. (Dkt. No. 11, at 6-15 [Def.'s Mem. of Law].) First, Defendant argues that because substantial evidence supports the finding that Plaintiff's impairments did

not significantly limit her ability to perform work activities over a period of at least twelve months, the Commissioner's final decision should be affirmed. (Id. at 6-13.) In support of the ALJ's conclusion that Plaintiff's impairments did not significantly limit her ability to perform basic work activities over a period of at least twelve months, Defendant notes the following: (a) Plaintiff's reports that she applied for disability and was not working due to her physical condition rather than mental condition; (b) Plaintiff's reported daily activities; (c) an April 2013 mental status examination with benign findings, Plaintiff's failure to follow-up with mental health treatment following this examination, and a subsequent evaluation in October 2014, at which time psychiatrist Bahram Omidian, M.D., assessed a Global Assessment of Functioning ("GAF") score of 60 to 70; and (d) Dr. Marks' opinion indicating "some isolated" moderate limitations but no specific limitations within the narrative portion. (Id. at 7-9.) Defendant argues that the ALJ considered all of this evidence and reasonably observed that Plaintiff's failure to follow through with treatment, the generally mild limitations Dr. Shapiro assessed and confirmed by Dr. Omidian's opined GAF score, and Plaintiff's admitted activity level did not support the presence of functional limitations that would significantly limit her ability to perform basic work activities over a period of at least twelve months. (Id. at 9.)

Regarding Plaintiff's physical conditions, Defendant argues that the ALJ noted and relied on the following: (a) normal physical examination findings around the time of Plaintiff's application leading to diagnoses of only gastroesophageal reflux disease ("GERD") and an anxiety disorder not otherwise specified; (b) Plaintiff's refusal of a pain management referral; (c) a lack of specific abnormal clinical findings at Dr. Morell's examination; (d) insufficient clinical findings at a subsequent consultative examination to

6

establish fibromyalgia and a lack of corroborating medical evidence to support the

clinical findings which the consultative examiner attributed to osteoarthritis or a back

impairment; (e) the lack of any consistent treatment for Plaintiff's allegedly totally

disabling symptoms; and (f) the general lack of evidence to establish limitations

significantly restricting basic work activities over a period of at least twelve months.

(Dkt. No. 11 at 9-10, 12.)  Defendant also argues that the ALJ specifically considered

and found that Plaintiff failed to establish the requisite criteria for a diagnosis of

fibromyalgia.  (Id. at 11.)  Additionally, Defendant argues that, contrary to Plaintiff's

argument that her claim should not have been denied at Step Two because her

condition may have been expected to last for at least twelve months, the relevant period

the ALJ considered already spanned a period of more than twelve months, so this was

not a case where expected durational severity had to be projected based on evidence

from a period of less than twelve months.  (Dkt. No. 11 at 12-13.)

        Second, Defendant argues that the ALJ met her duty of developing the record

(Dkt. No. 11 at 13.)  Defendant notes that the ALJ requested and made follow-up

requests for records from several sources and proffered the records from sources who

responded to Plaintiff and argues that these efforts satisfied the ALJ's responsibilities

under the regulations.  (Id.)  Defendant argues that the fact that some providers did not

respond neither negates the discretionary nature of any further duty to develop the

record nor removes this issue from the ALJ's discretion so as to preclude her from

issuing a decision.  (Id. at 13-14.)

        Third, Defendant argues that the vocational expert testimony confirms that, even

had the ALJ proceeded with the sequential analysis, the ALJ would have still concluded

7

that Plaintiff was not disabled.  (Dkt. No. 11 at 10-11, 15.)  Defendant argues that Plaintiff's arguments fail to demonstrate that the ALJ's analysis is so far removed from what the record evidence shows as to be beyond the rationale of any reasonable factfinder; and, accordingly, under the substantial evidence standard of review, the ALJ's decision should be affirmed.  (Id. at 15.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude* otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate

conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B.  Determination of Disability[1]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

---

[1]  Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

"based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age,

and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

        The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a 'severe impairment' which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [Commissioner]
> will consider him [or her] disabled without considering
> vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who
> is afflicted with a 'listed' impairment is unable to perform
> substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity to
> perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-

80 (2d Cir. 1998) (citing <u>Berry</u>, 675 F.2d at 467).  If the inquiry progresses to the fifth

step, the burden shifts to the Commissioner to prove that the plaintiff is still able to

engage in gainful employment somewhere.  <u>Id.</u> at 1180 (citing <u>Berry</u>, 675 F.2d at 467).

"In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports

the decision." <u>Barringer v. Comm'r of Soc. Sec.</u>, 358 F. Supp. 2d 67, 72 (N.D.N.Y.

2005) (citing <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court

cannot substitute its interpretation of the administrative record for that of the

Commissioner if the record contains substantial support for the ALJ's decision.  <u>See</u>

<u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998).  If supported by substantial

evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805

F. Supp. 147, 153 (S.D.N.Y. 1992).  The Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that

of the [Commissioner], even if it might justifiably have reached a different result upon a

de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d

Cir. 1984).

### III.    ANALYSIS

#### A.    Whether the Step Two Determination is Supported
by Substantial Evidence

At Step Two, the ALJ must determine whether the claimant has a severe

impairment that significantly limits her physical or mental abilities to do basic work

activities.  See 20 C.F.R. § 416.920(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations.  See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe."  Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  Id. (citing Miller v. Comm'r of Soc. Sec., 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has also indicated that the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe.  See Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report-Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find the plaintiff's anxiety and panic

disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered the plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found that Plaintiff's anxiety, depression, myositis, and gastroesophageal reflux/peptic ulcer disease were medically-determinable impairments. (T. 13.)  However, the ALJ found that the treatment notes from Plaintiff's rheumatologist do not support Plaintiff's allegations of disabling levels of pain and or a finding that her alleged fibromyalgia or arthritis were severe impairments during the relevant period.  (T. 16.)  The ALJ did not find that Plaintiff had any severe impairments and did not continue the sequential evaluation past Step Two.  (T. 13-17.)  The Court finds that the ALJ erred at Step Two and because the ALJ did not continue the sequential evaluation, his Step Two error is not harmless, and, therefore, remand is appropriate.

First, the ALJ failed to find that fibromyalgia or osteoarthritis were medically-determinable impairments despite longitudinal evidence suggesting otherwise.  (T. 13.) The record indicates that Plaintiff reported that she was diagnosed with fibromyalgia as early as 1994 or 1996.  (T. 383-84, 395.)  A history of fibromyalgia and osteoarthritis is evident throughout the record and each condition was assessed on several occasions by physicians.  (T. 359, 381-88, 412-32.)  Between September 2011 and April 2013, treating rheumatologist Dr. Morell consistently documented positive trigger points and diagnosed fibromyalgia as well as bursitis of the hip, tendonitis, and osteoarthritis.  (T. 413-28.)

Consultative examiner Dr. Perkins-Mwantuali also assessed fibromyalgia, osteoarthritis, and back pain with decreased range of motion in the lumbosacral spine and opined that Plaintiff had a mild limitation with bending and twisting and a moderate limitation with walking, standing, climbing, and squatting.  (T. 398-99.)  However, the only physical impairments the ALJ found to be found medically determinable were myositis (inflammation of the muscles) and gastroesophageal reflux/peptic ulcer disease.  (T. 13.)[4]

Second, the ALJ's decision indicates a failure to properly assess fibromyalgia as a medically determinable impairment pursuant to Social Security Ruling ("SSR") 12-2p.  (T. 16.)  Although the ALJ's decision includes a recitation of Section II.A. of SSR 12-2p (based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia), the decision includes no mention or analysis of Section II.B. of SSR 12-2p (based on the 2010 ACR Preliminary Diagnostic Criteria).[5]  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

Section II.B. indicates that the Agency may find that a person has a medically-determinable impairment of fibromyalgia if he or she has all three of the following:

1. A history of widespread pain (see section II.A.1.);

---

[4]  Although the Court does not find this to be dispositive, it is noted that in past ALJ decisions in 2010 and 2013, fibromyalgia was found to be a severe impairment.  (T. 134, 151.)  Degenerative disc disease of the lumbar spine was found to be a severe impairment in the 2013 ALJ decision.  (T. 151.)  See generally Guarino v. Comm'r of Soc. Sec., 7:07-CV-1252 (GLS/VEB), 2010 WL 199721, at *8 (N.D.N.Y. Jan. 14, 2010) ("However, the ALJ did not address the Commissioner's prior decision, which determined that Plaintiff did have an impairment or combination of impairments considered 'severe' under the Regulations.  At a minimum, the ALJ was obligated to address this change in circumstance and set forth an explanation as to why he was reaching a different conclu[sion] than that reached by the previous ALJ.").

[5]  SSR 12-2p provides: "We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

Id.  The ALJ stated that "[f]ibromyalgia is recognized as a medically determinable impairment when the evidence meets the diagnostic criteria" in Section II.A. and emphasized one visit with Dr. Morell in April 2013, further stating – inaccurately –  that "Dr. Morell never identified any positive tender points."  (T. 16.)  Therefore, the ALJ's decision does not suggest a proper analysis of the medical determinability of fibromyalgia under SSR 12-2p because it does not appear that the ALJ considered Plaintiff's fibromyalgia under both sections of SSR 12-2p.  The Court also notes that it is well settled that "'[fibromyalgia's] cause or causes are unknown, there is no cure and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.'"  Warthan v. Comm'r of Soc. Sec., 7:16-CV-36 (GTS), 2017 WL 79975, at *7 (N.D.N.Y. Jan 9, 2017) (quoting Cabibi v. Colvin, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014)).

Third, the Court finds that the ALJ failed to properly apply the de minimis standard in assessing Plaintiff's physical impairments[6] at Step Two.  The ALJ's analysis of Plaintiff's fibromyalgia and osteoarthritis at Step Two appears to conflate the de

---

[6]    Plaintiff also alleges error with respect to the severity analysis regarding her mental impairments. (Dkt. No. 9, at 5-6, 8 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive in light of the ALJ's more detailed analysis (including the consideration of multiple medical opinions) regarding Plaintiff's mental impairments and her finding that anxiety and depression were medically determinable, though non-severe, impairments.  (T. 13-15.)  However, because remand is required on other grounds, all of Plaintiff's impairments will need to be properly considered on remand.

minimis standard for an impairment to be found severe with the ultimate determination of whether Plaintiff is disabled.  See Taylor, 32 F. Supp. 3d at 265; see generally Guarino, 2010 WL 199721, at *8 ("Step two, the severity step, is only used to dismiss de minimis claims. If a claimant has more than a slight abnormality the analysis must continue to the third step.") (citing Bowen v. Yuckert, 482 U.S. 137 (1987)).  Although the ALJ indicates that the treatment notes from Dr. Morrell do not support a finding of a severe impairment during the relevant time period, the ALJ also indicates that these notes "do not support the claimant's allegations of disabling levels of pain."  T. 16.  This inconsistency leaves this Court unsure as to the legal standard the ALJ employed in assessing the severity of Plaintiff's impairments.  (T. 16)  Further, the ALJ's analysis appears to misrepresent or misinterpret Plaintiff's treatment notes.  For example, the ALJ stated that an examination report from Dr. Morell dated April 26, 2013 "included no clear and specific indications of abnormal clinical findings" and the ALJ subsequently stated that "Dr. Morell never identified any positive tender points."  (T. 15, 16.)  Although this treatment note is difficult to read, it does indicate tenderness in the section documenting range of motion and positive trigger points in the occiput, low cervical, trapezius, and possibly supraspinous areas.  (T. 413.)  This note also indicates diagnoses of bursitis of the hip, fibromyalgia, and osteoarthritis, and sets forth a possible treatment plan including a steroid injection to the hip.  (T. 414.)

Dr. Morell's findings are consistent with primary care physician Dr. LaValley's February 2013 findings -- made just two months before Dr. Morell's examination -- noting pain on palpation of the bilateral knees, right hip, right ribs, and lower back with a plan to increase Lortab until Plaintiff could see Dr. Morell.  (T. 369.)  Notably, the ALJ

stated that Plaintiff refused a pain management referral at this appointment and her

dosage of Lortab was increased for only two weeks, but the record demonstrates that

Dr. LaValley noted that Plaintiff refused pain management because she preferred to

continue treating with Dr. Morell.  (T. 15, 369.)

The July 2013 consultative examination also calls into question the ALJ's findings

at Step Two.  The ALJ stated that Dr. Perkins-Mwantuali

> found only four positive trigger points, which is inconsistent
> with even a diagnosis of fibromyalgia.  Although the examiner
> found that claimant had abnormal findings suggestive of
> osteoarthritis of the knees and [symptoms] consistent with a
> back impairment, including decreased range of motion in [the]
> back and knees and an enlarged right knee with crepitus in
> the knees, the undersigned notes that claimant had no
> treatment for these complaints since April 2013.  There is no
> evidence of a severe osteoarthritic condition for 12 continuous
> months.

(T. 16.)  As discussed above, Section II.B. of SSR 12-2p does not require 11 of 18

tender points for a diagnosis of fibromyalgia; thus, it is impossible for this Court to know

whether the ALJ properly considered Dr. Perkins-Mwantuali's examination findings in

light of SSR 12-2p Section II.B.  Indeed, she did not find plaintiff's fibromyalgia to be a

medically-determinable impairment.

Moreover, although the ALJ did note certain of Dr. Perkins-Mwantuali's findings,

the ALJ's analysis overlooks many of her other findings suggestive of limitations,

including plaintiff's abnormal gait -- described as a waddle with feet turned inward when

she walked --  partial squat, tenderness to palpation in the low lumbar region, bilateral

sacroiliac joint tenderness and bilateral hip tenderness (right greater than left), straight

leg raise indicated at 30 degrees bilaterally, and decreased sensation to touch and pain

in the right lateral thigh.  (T. 396-98.)  Dr. Perkins-Mwantuali diagnosed obesity,

fibromyalgia, osteoarthritis, back pain with decreased range of motion in the lumbosacral spine, epilepsy, and status post cervical disc surgery.  (T. 398.)  She indicated a "guarded" prognosis and opined that Plaintiff should not drive or be at heights unattended.  (T. 399.)  She opined that Plaintiff had a mild limitation in bending and twisting and a moderate limitation in walking, standing, climbing, and squatting.  (Id.)  In light of the ALJ's finding that fibromyalgia and osteoarthritis were not medically-determinable impairments, it is troubling that the ALJ would decline to address several positive findings and opined physical limitations.  This is further problematic because the ALJ did not continue the sequential evaluation and engage in an analysis of the opinion evidence pertaining to Plaintiff's physical impairments and limitations.  (T. 14-17.)  See Fuimo, 948 F. Supp. 2d at 269-70.

To be sure, the medical evidence of record is sparse in this case.  However, the ALJ's analysis leaves it uncertain as to whether she properly considered the limited evidence available because of the misrepresentations and omissions discussed above.  The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings.  See Booker v. Astrue, 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)).  The ALJ's provided rationale does not allow the Court to make that assessment.

Although the ALJ notes a lack of treatment, due to the uncertainty whether the ALJ properly considered the available medical evidence in assessing the medical determinability and severity of Plaintiff's impairments, this Court cannot determine whether the ALJ's Step Two findings are supported by substantial evidence.  Further, the longitudinal notes from treating rheumatologist Dr. Morell between September 2011 and April 2013, the mutually consistent findings from treating providers Drs. Morell and LaValley, and the findings and opined limitations from consultative examiner Dr. Perkins-Mwantuali all undermine the ALJ's Step Two conclusion.  Because the Court cannot determine whether the ALJ's findings are supported by substantial evidence, remand is necessary.

### B.    Whether the ALJ Failed to Properly Develop the Record

As the Commissioner notes, plaintiff suggests that the ALJ failed to meet his duty to develop the record.  Dkt. No. 9 at 7; Dkt. No. 11 at 13.    Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits.  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999); citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002), Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).  "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503,

508-09 (2d Cir. 2009)).  An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." <u>Hart v. Comm'r</u>, 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d) (internal quotation marks omitted)).

Here, the ALJ made multiple requests for medical records from various providers including NP Griffing, Dr. Morell, The Neighborhood Center, Inc., Digestive Disease Medicine, and Dr. Arun Dhingra.  (T. 332-55.)  The records the ALJ did receive from the Neighborhood Center and Digestive Disease Medicine were proffered to Plaintiff as Exhibits D8F and D9F on December 30, 2014.  (T. 356-57, 434-71.)  In light of these requests, the Court finds that the ALJ met her duty to develop the record.

However, because remand is necessary to address the deficiencies in the ALJ's Step Two analysis, on remand, the ALJ should again make any reasonable efforts to supplement the record pursuant to the ALJ's affirmative obligation to develop the administrative record.  <u>See</u> <u>Burgess</u>, 537 F.3d at 128 (quoting <u>Melville</u>, 198 F.3d at 52; citing <u>Shaw</u>, 221 F.3d at 134).

## IV.  Conclusion

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED in part and DENIED in part**: the motions is granted insofar as the matter will be remanded to the Commissioner for the reasons stated herein, but denied insofar

as Court declines to find that the ALJ failed to meet her duty to properly develop the

record; and it is further

      **ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11)

is **DENIED in part and GRANTED in part**: the motion is granted insofar as the Court

determines that the ALJ properly developed the record, and the motion is otherwise

denied; and it is further

      **ORDERED**, that Defendant's decision denying Plaintiff disability benefits is

**VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. §

405(g) for proceedings consistent with this Memorandum-Decision and Order.

      **IT IS SO ORDERED**.

Dated: March 20, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge